## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| The University of Chicago Medical Center, | ) |
| 5841 South Maryland Avenue | ) |
| Chicago, IL 60637-1470, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | )   Civil Action No. _____ |
| Sylvia M. Burwell, Secretary, | ) |
| U.S. Department of Health and Human Services | ) |
| 200 Independence Avenue, S.W. | ) |
| Washington, DC 20201, | ) |
|  | ) |
| Defendant. | ) |

_____)

### COMPLAINT

Plaintiff, The University of Chicago Medical Center ("the Hospital"), by and through its undersigned attorneys, brings this action against defendant Sylvia M. Burwell, in her official capacity as the Secretary ("the Secretary") of the Department of Health and Human Services ("HHS"), and states as follows:

### A.    Preliminary Statement

1.      This action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.* ("the Medicare Act"), and the Administrative Procedure Act ("APA"), 5 U.S.C. §§551 *et seq.*  Plaintiff seeks reversal of the March 12, 2014, March 4, 2015, and March 18, 2015 decisions of the Provider Reimbursement Review Board ("PRRB"), which dismissed for lack of jurisdiction four Medicare payment matters that the Hospital had included in its appeal to the PRRB of the Hospital's Medicare cost report for its fiscal year ("FY") ending on June 30, 2000 ("FY 2000").  Plaintiff also seeks reversal of the May 14, 2014, March 3, 2015, and March 18,

2015 PRRB decisions, which dismissed for lack of jurisdiction the same four Medicare payment matters that the Hospital also had included in its appeal to the PRRB of its FY 2001 Medicare cost report.  The PRRB's FYs 2000 and 2001 dismissals were based on the Hospital's alleged failure to meet certain procedural requirements related to the appeal of the dismissed matters.  The PRRB's decisions, however, are inconsistent with the PRRB's jurisdictional statute facially and as interpreted by the United States Supreme Court.  Moreover, they are based, in part, on the clearly erroneous holding that two decisions issued by the United States Court of Appeals for the Seventh Circuit are "controlling precedent" for purposes of determining the PRRB's jurisdiction over the dismissed matters, even though the Hospital, which is located in Chicago, Illinois, was not a party in either of these Seventh Circuit cases and the Hospital has the explicit statutory right to bring this action in the United States Court of Appeals for the District of Columbia Circuit.  Further, the PRRB did not question its jurisdiction over the dismissed matters in the Hospital's FYs 1996-1998 PRRB appeals, and there was no intervening change in the applicable statutes, or any judicial decision, to support the PRRB's change in position regarding its jurisdiction over these matters in the Hospital's FYs 2000 and 2001 appeals.  It is uncontested that the Hospital would receive significant additional indirect medical education ("IME") and direct graduate medical education ("DGME") payments if the PRRB is found to have jurisdiction over the dismissed matters.  Thus, the Hospital asks this Court to issue an order (a) reversing these PRRB dismissal decisions, (b) requiring the PRRB to accept jurisdiction over the matters improperly dismissed from the Hospital's PRRB appeals for both FYs 2000 and 2001, and (c) requiring the Secretary to recalculate the Hospital's FYs 2000 and 2001 Medicare payments and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2).

**B.**     **Jurisdiction and Venue**

2.     This Court has jurisdiction under 42 U.S.C. §1395oo(f) (appeal of final Medicare program agency decision) and 28 U.S.C. §1361 (mandamus).

3.     Venue lies in this judicial district under 42 U.S.C. §1395oo(f) and 28 U.S.C. §1391.

**C.**     **Parties**

4.     Plaintiff University of Chicago Medical Center (Medicare Provider No. 14-0088) is a not-for-profit, acute-care teaching hospital located in Chicago, Illinois.  The Hospital is currently known as The University of Chicago Medical Center.  When its Medicare provider number was issued, however, the Hospital was known as the University of Chicago Hospitals, and this remains the name associated with its provider number.  The Hospital furnishes inpatient and outpatient hospital services including to patients entitled to benefits under the Medicare program and others.  The Hospital operates graduate medical education programs for residents in various specialty and sub-specialty areas, all of which qualify as approved medical residency programs eligible for Medicare reimbursement.

5.     Defendant Sylvia M. Burwell is the Secretary of the Department of Health and Human Services, the federal department which contains the Centers for Medicare & Medicaid Services ("CMS").  The Secretary, the federal official responsible for administration of the Medicare Program, has delegated the responsibility to administer that program to CMS.  Before June 14, 2001, CMS was known as the Health Care Financing Administration ("HCFA").  In this Complaint, the Hospital refers to the agency as CMS or HCFA interchangeably or, as appropriate, depending on the context.

**D.**     **General Background of the Medicare Program**

6.     The Medicare provisions of the Social Security Act, codified at 42 U.S.C. §§1395 *et seq.*, establish a system of health insurance for the aged, disabled, and individuals with end-stage renal disease.   Pursuant to 42 U.S.C. §1395cc, the Hospital entered into a written agreement with the Secretary to provide hospital services to Medicare-eligible individuals.

7.     Hospitals are entitled to payment from Medicare for their "reasonable costs" incurred in providing services to Medicare beneficiaries, in accordance with regulations adopted by the Secretary.   "Reasonable cost" is defined in the statute as the:

> cost actually incurred, excluding therefrom any part of incurred cost found to be unnecessary in the efficient delivery of needed health services, and shall be determined in accordance with regulations establishing the method or methods to be used, and the items to be included, in determining such costs for various types or classes of institutions, agencies, and services.

42 U.S.C. §1395x(v)(1)(A).

8.     In adopting reasonable cost regulations, the statute requires the Secretary ("the Secretary") of the United States Department of Health and Human Services ("HHS") to "take into account both direct and indirect costs of providers of services . . . in order that, under the methods of determining costs, *the necessary costs of efficiently delivering covered services to individuals covered by [Medicare] will not be borne by individuals not so covered*."   *Id.* (emphasis added).   The Medicare Act further requires that "[n]o rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . [under Medicare] shall take effect unless it is promulgated by the Secretary by regulation . . . ."   42 U.S.C. §1395hh(a)(2).

9.     Based on delegated authority from the Secretary, CMS implements the Medicare program, in part, through the issuance of official Rulings.   *See* 42 C.F.R. §401.108.   In addition

to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes numerous other interpretive rules implementing the Medicare program, which are compiled in one or more of the CMS Manuals.

10.     Medicare payment to providers of services is commonly carried out by contractors acting as agents of the Secretary pursuant to contracts with her.  These contractors, which are now called "Medicare Administrative Contractors" ("MACs"), were formerly called Medicare Fiscal Intermediaries.  Each Medicare-participating hospital is assigned to a MAC.  At all times relevant to this action, the Hospital's MAC has been National Government Services, Inc. (previously known as AdminaStar Federal) ("the MAC").

**E.      The Cost Report Submission and Appeals Process**

11.     At the close of its FY, a hospital must submit a "cost report" showing the costs incurred during the FY and other data used to determine Medicare reimbursement for the FY. The hospital's MAC is required to analyze and audit the cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its Medicare reimbursement for the FY.

12.     If a hospital is dissatisfied with its MAC's final determination of total Medicare program reimbursement for a cost reporting period, as reflected in the NPR, it may seek to have the NPR corrected or altered in one of two ways:

a.       The hospital has a right to obtain a hearing before the PRRB by filing an appeal with the PRRB within 180 days of receiving its NPR.  42 U.S.C. §1395oo.

b.       The hospital may request reopening of a MAC's determination within three years of the date of notice to the hospital of the MAC's determination.  42 C.F.R. §405.1885.

13.     If a hospital's reopening request is granted, and there is a change in the hospital's Medicare payment, the MAC's updated Medicare payment determination is set forth in a Revised NPR.  42 C.F.R. §405.1885(a).  The hospital has a right to obtain a hearing before the PRRB if it is dissatisfied with the Revised NPR by filing an appeal with the PRRB within 180 days of the hospital's receipt of its Revised NPR.  42 U.S.C. §1395oo; 42 C.F.R. §405.1889.

14.     Regardless whether a hospital files a request for a PRRB hearing or seeks reopening, regulations adopted by the Secretary require a MAC's determination to be reopened within three years of the date of notice of the determination to the hospital if CMS provides explicit notice to the MAC that the determination is "inconsistent with the applicable law, regulations, CMS ruling," *etc.*  42 C.F.R. §405.1885(c)(1)(i).

### F.     PRRB Hearing Procedures and the Procedure for Administrative and Judicial Review of PRRB Decisions

15.     The Medicare statute specifies the following requirements for a PRRB appeal:

Any provider of services which has filed a required cost report within the time specified in regulations may obtain a hearing with respect to such cost report by a Provider Reimbursement Review Board . . . if –

(1) such provider . . . is dissatisfied with a final determination of . . . its fiscal intermediary . . . as to the amount of total program reimbursement due the provider for the items and services furnished to individuals for which payment may be made under this subchapter for the period covered by such report . . .

(2) the amount in controversy is $10,000 or more, and

(3) such provider files a request for a hearing within 180 days after notice of the intermediary's final determination . . . .

42 U.S.C. §1395oo(a).

16.     Once jurisdiction for an appeal is established under 42 U.S.C. §1395oo(a), 42 U.S.C. §1395oo(d) grants the PRRB broad authority to decide all issues related to the provider's cost report:

> The Board shall have the power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report (including revisions adverse to the Hospital of services) even though such matters were not considered by the intermediary in making such final determination.

42 U.S.C. §1395oo(d).  In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction.

17.     The decision of the PRRB on substantive or jurisdictional matters constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision.  42 U.S.C. §1395oo(f)(1); 42 C.F.R. §§405.1875 and 405.1877.  The Secretary has delegated her authority under the statute to review PRRB decisions to the CMS Administrator.

18.     A hospital may obtain judicial review of a final administrative decision, whether substantive or jurisdictional, by filing suit within 60 days of receipt of the final action on the administrative appeal in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia.  42 U.S.C. §1395oo(f).  In any such action, the Secretary is the proper defendant because, under 42 C.F.R. §421.5(b), the Secretary, acting through CMS, "is the real party of interest in any litigation involving the administration of the [Medicare] program."   Under 42 U.S.C. §1395oo(f)(2), interest is to be awarded in favor of a hospital that prevails in an action brought under 42 U.S.C. §1395oo(f).

19.     Judicial relief is available under the equitable remedy of mandamus where a hospital has a clear right to the relief sought and the Secretary has a defined and non-discretionary duty to honor that right.  *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001).

20.     When the Hospital filed its FY 2000 cost report on or about November 30, 2000,

and its FY 2001 cost report on or about November 30, 2001, CMS regulations stated:

> The provider (but no other individual, entity, or party) has a right to a hearing
> before the Board about any matter designated in § 405.1801(a)(1), if:
>
>> (1) An intermediary determination has been made with respect to the
>> provider; and
>> (2) The provider has filed a written request for a hearing before the Board
>> under the provisions described in § 405.1841(a)(1); and
>> (3) The amount in controversy (as determined in § 405.1839(a)) is
>> $10,000 or more.

42 C.F.R. §405.1831(a) (1998).   Also at that time, 42 C.F.R. §405.1801(a) defined an

intermediary determination as "a determination of the total amount of payment due the hospital,

pursuant to § 405.1803 following the close of the hospital's cost reporting period, under that

[prospective payment] system for the period covered by the determination."   This regulatory

scheme did not limit PRRB jurisdiction to items claimed on the cost report, in part because not

all Medicare payment items could be validly claimed in the cost report.   *See Bethesda Hospital*

*Association v. Bowen ("Bethesda")*, 485 U.S. 399, 405 (1988).   Rather, a hospital merely had to

be dissatisfied with the amount of total reimbursement, file a hearing within the specified

timeframe, and have at least $10,000 in controversy, which the Hospital indisputably did with

respect to its FYs 2000 and 2001 Medicare cost report appeals.

21.     In 2008, CMS revised the regulations governing PRRB hearings and created new

restrictions on PRRB jurisdiction.   The previous standards were changed to require, for cost

reporting periods ending on or after December 31, 2008, that the provider either claim the item

on the cost report or self-disallow the item:

> A provider (but no other individual, entity, or party) has a right to a Board
> hearing, as a single provider appeal, *for specific items claimed* for a cost reporting
> period covered by an intermediary or Secretary determination, only if—

(1) The provider has preserved its right to claim dissatisfaction with the amount of Medicare payment for the specific item(s) at issue, by either— (i) *Including a claim for specific item(s) on its cost report* for the period where the provider seeks payment that it believes to be in accordance with Medicare policy; or (ii) Effective with cost reporting periods that end on or after December 31, 2008, self-disallowing the specific item(s) . . . .

42 C.F.R. §405.1835(a) (2008) (emphasis added). This regulation, which by its own terms does not apply to the Hospital's FYs 2000 and 2001 PRRB appeals, is invalid because it is inconsistent with the statutory provision at 42 U.S.C. §1395oo(a) entitling a provider to a hearing if the provider is dissatisfied with the amount of total Medicare reimbursement.

22. Even if the 2008 regulations are valid, they cannot be applied to the Hospital's FYs 2000 and 2001 PRRB appeals because doing so would constitute improper retroactive application in violation of the APA and other authorities. *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988).

23. Even if the 2008 regulations are valid and may be applied to the Hospital's FYs 2000 and 2001 PRRB appeals, the Hospital has complied with them.

G. **Statutory and Regulatory Authorities Relating to IME and DGME Payments**

24. Effective with cost reporting years beginning on or after October 1, 1983, Congress adopted the hospital inpatient prospective payment system ("IPPS") to reimburse hospitals, such as the Hospital, for inpatient hospital operating costs. 42 U.S.C. §1395ww(d).

25. Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospital. Rather, IPPS hospitals are paid predetermined, nationally applicable rates based on the diagnoses of the patient at discharge categorized within one or more Medicare severity diagnosis-related groups ("MSDRGs"), subject to certain payment adjustments. 42 U.S.C. §1395ww(d)(1)-(5); 42 C.F.R. Part 412.

26.     One of these IPPS payment adjustments is the "indirect medical education" or "IME" adjustment.   The IME payment is designed to compensate hospitals for the overall increased costs associated with operating a teaching hospital.  42 U.S.C. §§1395ww(d)(5)(B) and (h).   In creating the IME adjustment, Congress considered several factors that contribute to increased overhead costs at teaching hospitals, *e.g.*, increased demands placed upon staff participating in the education process, increased number of tests and procedures performed by residents as they learn their medical specialties, and teaching hospitals attract generally sicker patients and provide more specialized services, among other factors.   Congress required the Secretary to calculate teaching intensity for the IME adjustment based on the ratio of medical interns and residents (hereinafter "residents") being trained at the hospital to the available inpatient beds at the hospital.  *Id*.  Regulations adopted by the Secretary at 42 C.F.R. §412.105 elaborate on the calculation of IME payments.

a.     The IME payment is a percentage add-on to a teaching hospital's payments under IPPS. 42 U.S.C. §1395ww(d)(5)(B).   The "IME adjustment factor" is multiplied by the hospital's MSDRG payments for a FY to arrive at the IME reimbursement amount due for that FY.  *Id*

b.     The formula mandated by Congress for the calculation of the IME adjustment factor depends, in part, on the number of residents, which is defined as "the number of full-time equivalent residents," or "FTEs," which "shall equal the average of the actual full-time equivalent resident count for the cost reporting period and the preceding two cost reporting periods."   42 U.S.C. §1395ww(d)(5)(B)(vi)(II).   Accordingly, Medicare payment for IME will vary depending on the number of residents in a hospital's residency training programs.

c.      The IME formula also depends on the number of available inpatient beds.  *See* 42 U.S.C. §1395ww(d)(5)(B)(ii).  The Secretary is authorized to define available inpatient "beds" for IME payment purposes.  42 U.S.C. §1395ww(d)(5)(B)(vi)(I).  The Secretary defines "beds" as "the number of available bed days during the cost reporting period" divided by the "number of days in the cost reporting period."  42 C.F.R. § 412.105(b).

27.     The Medicare Act also requires that hospitals engaged in graduate medical education activities be reimbursed for the *direct* costs of those activities.  42 U.S.C. §1395ww(h).  The "direct graduate medical education" or "DGME" payment is designed to account for the direct costs associated with residency programs, such as salaries and fringe benefits for residents.  The DGME payment is calculated by multiplying a hospital's "approved amount" times its Medicare "patient load."  42 U.S.C. §1395ww(h)(3)(A).  The "patient load" is "the fraction of the total number of inpatient-bed-days . . . during the period which are attributable to patients with respect to whom payment may be made under [Medicare] part A . . . ."  42 U.S.C. §1395ww(h)(3)(C).

a.      The "approved amount" is a product of a hospital's "approved FTE resident amount" (which is not at issue here) and the weighted average number of FTEs.  42 U.S.C. §1395ww(h)(3); 42 C.F.R. §413.76.  The weighted average number of FTEs is calculated using "the actual full-time equivalent resident counts for the cost reporting period and the preceding two cost reporting periods."  42 U.S.C. § 1395ww(h)(4)(G).  Accordingly, Medicare payment for DGME will vary depending on the number of residents in a hospital's residency training programs.

b.      The statute requires the Secretary to establish rules for determining the number of such residents.  *See* 42 U.S.C. §1395ww(h)(4).  The total number of residents is determined in

accordance with the regulations adopted by the Secretary at 42 C.F.R. §§413.75 *et seq.*, which is also used to determine IME resident FTEs.   In addition, 42 C.F.R. §413.79 sets forth the rules for weighting DGME FTE residents based, in part, on the length of their residency program.

28.     Historically, the more resident FTEs that a teaching hospital trained in a cost reporting period, the higher the teaching hospital's IME and DGME payments would be. However, for cost reporting periods beginning on or after October 1, 1997, Congress established a cap on the number of a hospital's resident FTEs that can be counted for IME and DGME payment purposes, based on the hospital's number of FTEs during the most recent FY that ended on or before December 31, 1996.   42 U.S.C. §§1395ww(d)(5)(B)(v) and (h)(4)(F).   Thus, a hospital's correct IME and DGME payments depend on (1) the correct FTE count in its current FY, (2) the correct FTE counts in its previous two FYs (*see* Paragraphs 26.b and 27.a, above), and (3) the correct FTE count in FY 1996 "base year."

29.     On March 23, 2010, Congress enacted the Patient Protection and Affordable Care Act ("ACA"), Pub. L. No. 111-148, 124 Stat. 119, 660 (2010).   ACA §5505 required the inclusion of vacation and leave time when calculating IME resident FTEs:

> [A]ll the time that is spent by an intern or resident in an approved medical residency training program on vacation, sick leave, or other approved leave, as such time is defined by the Secretary, and that does not prolong the total time the resident is participating in the approved program beyond the normal duration of the program shall be counted toward the determination of full-time equivalency.

ACA §5505(a)–(b).   ACA §5505(a) adds vacation time to the DGME FTE count and ACA §5505(b) incorporates this DGME amendment into the IME statutory provision.   These changes to benefit hospitals were made retroactive to January 1, 1983.   ACA §5505(c).

**H.      FACTS SPECIFIC TO THIS CASE**

30.     a.      On or about November 30, 2000, the Hospital timely filed its FY 2000 Medicare cost report, which included claims for IME and DGME payments.  On September 25, 2002, the MAC issued the Hospital's FY 2000 Medicare NPR, which included MAC audit adjustments to both IME and DGME.

b.      On March 21, 2003, the Hospital timely filed notice of its appeal of its FY 2000 Medicare NPR with the PRRB.  By that letter, and subsequent correspondence with the PRRB, the Hospital challenged its IME and DGME payments for FY 2000 on several grounds, including the four matters that the PRRB ultimately dismissed for alleged lack of jurisdiction, which are at issue in this Complaint.

31.     a.      On or about November 30, 2001, the Hospital timely filed its FY 2001 Medicare cost report, which included claims for IME and DGME payments.  On June 27, 2003, the MAC issued the Hospital's FY 2001 Medicare NPR, which included MAC audit adjustments to both IME and DGME.

b.      On December 22, 2003, the Hospital timely filed notice of its appeal of its FY 2001 Medicare NPR with the PRRB.  By that letter, and subsequent correspondence with the PRRB, the Hospital challenged its IME and DGME payments for FY 2001 on several grounds, including the four matters that the PRRB ultimately dismissed for alleged lack of jurisdiction, which are at issue in this Complaint.

32.     The PRRB placed the Hospital's FYs 2000 and 2001 appeals in abeyance pending the outcome of litigation on the IME research FTE issue in the Hospital's FY 1996 appeal.

33.     On February 8, 2007, the Hospital and the MAC partially settled the Hospital's FY 1996 PRRB appeal.  Under the settlement, the MAC (a) added research FTEs to the

Hospital's FY 1996 DGME FTE count and (b) removed Clinical Research Center beds from the Hospital's IME bed count. In partially settling the Hospital's FY 1996 appeal, the MAC did not question the PRRB's jurisdiction over the settled issues or any other aspect of the appeal. Also, although the PRRB reviewed and accepted the settlement agreement, the PRRB did not, *sua sponte*, question its jurisdiction over any aspect of the FY 1996 appeal, which it is explicitly permitted to do.

34.     The IME research issue for FY 1996 was ultimately decided in the Hospital's favor by the Court of Appeals for the Seventh Circuit. *Univ. of Chicago Med. Ctr. v. Sebelius*, 618 F.3d 739 (7th Cir. 2010). After that decision was issued, (a) the MAC added research FTEs to the Hospital's IME and DGME resident FTE counts and the parties resolved the remainder of the FY 1996 appeal and (b) the PRRB removed all of the Hospital's appeals from abeyance, including the Hospital's FYs 2000 and 2001 appeals.

35.     On March 21, 2012, the Hospital and the MAC settled the Hospital's FY 1997 appeal. Under the settlement, the MAC, taking into account the updated caps, (a) added research FTEs to the Hospital's IME and DGME resident FTE counts for FY 1997 and (b) removed Clinical Research Center beds from the Hospital's FY 1997 IME bed count. As with the earlier settlement of the FY 1996 appeal, the MAC did not question the PRRB's jurisdiction over the settled issues or any other aspect of the FY 1997 appeal. Also, although the PRRB reviewed and accepted the FY 1997 settlement agreement, the PRRB again did not question its jurisdiction over these issues or any other aspect of the FY 1997 appeal. In fact, the signed settlement agreement for FY 1997 expressly stated that PRRB jurisdiction was proper.

36.     On March 26, 2012, the Hospital and the MAC settled the Hospital's FY 1998 appeal. Under the settlement, the MAC, again taking into account the updated caps, (a) added

research FTEs to the Hospital's IME and DGME resident FTE counts for FY 1998 and (b) removed Clinical Research Center beds from the Hospital's FY 1998 IME bed count.  As with the settlement of the FYs 1996 and 1997 appeals, the MAC did not question the PRRB's jurisdiction over the settled issues or any other aspect of the FY 1998 appeal.  Also, although the PRRB reviewed and accepted the FY 1998 settlement agreement, the PRRB again did not question its jurisdiction over these issues or any other aspect of the FY 1998 appeal.  In fact, the signed settlement agreement for FY 1998 expressly stated that PRRB jurisdiction was proper.

37.    a.    The MAC's September 26, 2012 letter objected to the PRRB's jurisdiction over two matters in the Hospital's FY 2000 appeal:  DGME research FTEs and inadvertently omitted IME and DGME FTEs.  The Hospital responded on November 8, 2012.  On March 12, 2014, the PRRB dismissed the following two matters from the Hospital's FY 2000 appeal for alleged lack of jurisdiction:  (1) DGME Research FTEs and (2) IME and DGME resident FTEs that were omitted from the Hospital's FY 2000 as-filed cost report (some inadvertently), including residents that were on vacation or otherwise on leave from their residency programs but who were properly included in the appeal based (in part) on the changes made in the ACA (the "Omitted Rotations" matter).

b.    On November 6, 2014, more than two years after its first jurisdictional objection, the MAC filed another jurisdictional objection in the Hospital's FY 2000 appeal, this time disputing the PRRB's jurisdiction over the Clinical Research Center beds matter.  The Hospital responded on December 8, 2014.  On March 4, 2015, the PRRB dismissed the Clinical Research Center beds matter from the Hospital's FY 2000 appeal for alleged lack of jurisdiction.

c.    In letters dated September 16, 2014 and October 20, 2014, the Hospital stated its position that the following two matters remained in this appeal after the PRRB's March

12, 2014 jurisdictional dismissals:  IME Prior Year Resident-to-Bed Ratio and DGME/IME FTEs – vacation and leave time.  The Hospital's September 16, 2014 and October 20, 2014 letters noted that the MAC did not agree that the IME Prior Year Resident-to-Bed Ratio and DGME/IME FTEs – vacation and leave time matters were part of this appeal.  On March 18, 2015, the PRRB (a) dismissed the IME Prior Year Resident-to-Bed Ratio matter from the Hospital's FY 2000 appeal for alleged lack of jurisdiction and (b) stated that the DGME/IME FTEs – vacation and leave time matter was part of the Omitted Rotations matter, which the PRRB had dismissed for lack of jurisdiction on March 12, 2014.

d.     The PRRB's March 12, 2014, March 4, 2015, and March 18, 2015 decisions in the Hospital's FY 2000 appeal are included as Exhibit 1 to this Complaint.

38.     a.     The MAC's September 28, 2012 letter objected to the PRRB's jurisdiction over two matters in the Hospital's FY 2001 appeal:  DGME research FTEs and inadvertently omitted IME and DGME FTEs.  The Hospital responded on November 9, 2012.  On May 14, 2014, the PRRB dismissed the following two matters from the Hospital's FY 2001 appeal for alleged lack of jurisdiction:  (1) DGME Research FTEs and (2) Omitted Rotations.

b.     On November 6, 2014, more than two years after its first jurisdictional objection, the MAC filed another jurisdictional objection in the Hospital's FY 2001 appeal, this time disputing the PRRB's jurisdiction over the Clinical Research Center beds matter.  The Hospital responded on December 8, 2014.  On March 3, 2015, the PRRB dismissed the Clinical Research Center beds matter from the Hospital's FY 2001 appeal for alleged lack of jurisdiction.

c.     In letters dated September 16, 2014 and October 20, 2014, the Hospital stated its position that the following two matters remained in this appeal after the PRRB's May 14, 2014 jurisdictional dismissals:  IME Prior Year Resident-to-Bed Ratio and DGME/IME

FTEs – vacation and leave time.  The Hospital's September 16, 2014 and October 20, 2014 letters noted that the MAC did not agree that the IME Prior Year Resident-to-Bed Ratio and DGME/IME FTEs – vacation and leave time matters were part of this appeal.  On March 18, 2015, the PRRB (a) dismissed the IME Prior Year Resident-to-Bed Ratio matter from the Hospital's FY 2001 appeal for alleged lack of jurisdiction and (b) stated that the DGME/IME FTEs – vacation and leave time matter was part of the Omitted Rotations matter, which the PRRB had dismissed for lack of jurisdiction on May 14, 2014.

d.      The PRRB's May 14, 2014, March 3, 2015, and March 18, 2015 decisions in the Hospital's FY 2001 appeal are included as Exhibit 2 to this Complaint.

I.      **The PRRB's Jurisdictional Decisions Relating to the Hospital's FYs 2000 and 2001 Appeals Are Unlawful and Must Be Reversed.**

39.      The PRRB's decisions in the Hospital's FYs 2000 and 2001 appeals are unlawful and must be reversed with respect to all of the jurisdictionally-dismissed matters because:

a.      The PRRB failed to address all of the arguments that the Hospital made in its oppositions to the MAC's jurisdictional challenges in the FYs 2000 and 2001 appeals.  For example, in dismissing the Clinical Research Centers beds matter in the Hospital's FY 2000 and 2001 appeals, the PRRB did not address the many earlier PRRB decisions with which the Clinical Research Centers beds matter dismissal directly conflicts, including those holding that (a) the IME payment is not a "cost" that needs to be claimed in the cost report and (b) a specific audit adjustment is not a necessary prerequisite for PRRB jurisdiction.

b.      The jurisdictional decisions were issued starting in March 2014 for the FY 2000 appeal and May 2014 for the FY 2001 appeal -- this was more than 13 years after the close of FY 2000 and more than 12 years after the close of FY 2001.  Each of the jurisdictional decisions challenged by this action was based on (a) the improper retroactive application of the 2008

regulations and (b) new interpretations by the PRRB of its authorities.  The application of the 2008 regulations and these new interpretations to the Hospital's FYs 2000 and 2001 appeals is improper because they are inconsistent with the PRRB's authorizing statute and more than 40 years of PRRB decisions.  Moreover, even if the Secretary could lawfully apply the regulations and new interpretations generally, they could not be applied to the Hospital's FYs 2000 and 2001 appeals because doing so would have an unlawful *retroactive* effect under *Georgetown, supra,* and other authorities.  Further, if the Secretary could lawfully apply the regulations and new interpretations retroactively, the Hospital met them.

c.   The MAC's first jurisdictional challenges were presented (a) in the Hospital's FY 2000 appeal more than nine years after the Hospital filed that appeal and (b) in the Hospital's FY 2001 appeal more than eight years after the Hospital filed that appeal.  This was long after the three-year period for the Hospital to seek corrective reopening of its FYs 2000 and 2001 NPRs under 42 C.F.R. §405.1885(b)(2)(iii).  The MAC's long delay before presenting its jurisdictional challenges is inconsistent with PRRB practice and unreasonably prejudicial to the Hospital.  The Commentary to PRRB Rule 44.4 states in relevant part as follows:  "In most instances, the reasons for a jurisdiction challenge are apparent early in the case and early resolution preserves resources of all the parties and the PRRB.  The new regulations and these PRRB rules establish the expectation that MACs review and notify the PRRB of jurisdiction questions at least by the date of filing the first response to the appeal."

40.   The PRRB dismissed the Omitted Rotations and Clinical Research Center beds matters because of the Hospital allegedly failed to properly claim the underlying matters in its FYs 2000 and 2001 Medicare cost reports.  The PRRB's decisions are unlawful and must be

reversed with respect to these two matters because 42 U.S.C. §1395oo does not require a hospital to present particular matters to its MAC in its as-filed cost report as a jurisdictional prerequisite to a PRRB hearing.  The Supreme Court held that the PRRB has the authority to review and revise a cost report with respect to matters that were not considered by a MAC, so long as the matter was covered by the cost report.  *Bethesda Hosp. Ass'n.*, 485 U.S. at 406.  IME and DGME payments are indisputably covered by the Medicare cost report.

41.     The PRRB's decisions dismissing the Omitted Rotations and Clinical Research Center Beds matters from the Hospital's FYs 2000 and 2001 appeals also are unlawful and must be reversed because the PRRB based its decisions on two cases from the Seventh Circuit that the PRRB improperly applied as "controlling precedent."  These decisions are not "controlling precedent" because the Hospital was not a party in them.  Further, the Hospital has the statutory right under 42 U.S.C. §1395oo(f)(1) to seek judicial review of the PRRB's FYs 2000 and 2001 jurisdictional dismissals in either the Seventh Circuit or the D.C. Circuit and the D.C. Circuit has no similar precedent.  Moreover, not only have the two Seventh Circuit cases not been followed by the D.C. Circuit, the PRRB and the CMS Administrator also have not consistently followed the holdings in these cases.

42.     The PRRB dismissed the Clinical Research Center beds matter from the Hospital's FYs 2000 and 2001 appeals because the PRRB found that the Hospital was not dissatisfied with the MAC's determinations of the number of beds used for purposes of calculating the Hospital's FYs 2000 and 2001 IME payments.  The PRRB's decisions are unlawful and must be reversed because the Hospital is, and has been, dissatisfied with the MAC's failure to exclude Clinical Research Center beds when calculating the Hospital's FYs 2000 and 2001 IME payments.

a.      It is indisputable that Clinical Research Center beds should be excluded from the bed count that is used for purposes of making the Hospital's IME payment calculation. The MAC improperly failed to exclude the Clinical Research Center beds when making the Hospital's IME payment calculations for FYs 1996-2004. The MAC agreed to resolve the Clinical Research Center beds matter in the Hospital's FYs 1996-1998 PRRB appeals by excluding these beds from the IME payment calculation. In doing so, the settlement agreements for these FYs explicitly stated that the PRRB had jurisdiction over the Clinical Research Center beds matter for those FYs.

b.      The MAC stated in a filing before the PRRB in both the Hospital's FYs 2000 and 2001 appeals that it "agrees to remove these beds [*i.e.*, the Clinical Research Center beds] from the IME computation, in accordance with the treatment of this issue in the Administrative Resolution of PRRB Case 01-0625 of this same Provider for FYE 6/30/1998."

c.      At the time the Hospital filed its FYs 2000 and 2001 appeals, it was not subject to the strict cost report presentation standard that the PRRB applied in dismissing this matter from the Hospital's FYs 2000 and 2001 appeals. In fact, as recently as March 2012, the MAC willingly settled the Clinical Research Center beds matter without jurisdictional concerns expressed either by the MAC or the PRRB. The only intervening change was that the PRRB began interpreting its rules differently and has prejudicially applied its new interpretations retroactively to appeals filed long before (a) the adoption of the 2008 regulations and (b) the Hospital had notice of the new interpretation.

d.      The Hospital properly claimed IME and appealed its IME payments for FYs 2000 and 2001. This entitles the Hospital to a PRRB hearing over all aspects of the IME payment calculation for those FYs, including the improper inclusion of Clinical Research Center

beds in the IME calculation.  This PRRB's jurisdiction dismissal of this matter in the Hospital's FYs 2000 and 2001 appeals was contrary to its prior actions on this matter.

43.    The PRRB's dismissal of the Omitted Rotations matter because the Hospital allegedly failed to properly claim these FTEs in its FYs 2000 and 2001 as-filed Medicare cost reports is unlawful and must be reversed because, not only were IME and DGME payments claimed on the cost report for these FYs, but some of the FTEs at issue were claimed on the cost report, and the Hospital merely seeks to correct those claims.  Further, CMS policy on including resident vacation and leave time in the IME and DGME FTE count was unclear in 2000 and 2001.  It was not until 2007 that CMS clarified that vacation and leave time can be included in the IME and DGME FTE counts.  Congress affirmed this inclusion in 2010 in ACA §5505(a)-(b).  When the Hospital filed its FYs 2000 and 2001 cost reports, CMS's regulations and guidance did not specifically address this category of time.  Thus, it was not clear that the Hospital could have properly claimed vacation and leave time FTEs for IME and DGME purposes when it filed its FYs 2000 and 2001 Medicare cost reports.  The Hospital should not be prejudiced for the lack of clarity in CMS's regulations and guidance.

44.    The PRRB's dismissal of the Prior-Year Resident-to-Bed Ratio matter from the Hospital's FYs 2000 and 2001 appeals based on the Hospital's alleged failure to have timely appealed this ratio is unlawful and must be reversed because this statistic was encompassed by the Hospital's appeal of the general category of incorrect prior-year statistics, as part of its challenge to its IME payments for FYs 2000 and 2001.  Furthermore, the Prior-Year Resident-to-Bed Ratio matter was also appealed inherently as part of the Hospital's appeal of IME resident FTEs and Clinical Research Center beds.  Moreover, in settling the Hospital's FY 1998 PRRB appeal, the MAC agreed to (with the PRRB's acceptance) increase the Hospital's FY 1998 IME

resident FTEs and exclude Clinical Research Center beds from the FY 1998 IME bed count. Using correct information in cost report appeals is required under *Kaiser Found. Hosps. v. Sebelius*, 708 F.3d 226 (D.C. Cir. 2013).  It is not reasonable for the PRRB to assert jurisdiction over some components of the IME calculation, but not others.  Also, the Hospital properly claimed IME and appealed its IME payment.  This entitles the Hospital to a PRRB hearing over all aspects of the IME payment calculation, including the MAC's use of an indisputably inaccurate Prior Year Resident-to-Bed ratio when making the Hospital's FYs 2000 and 2001 IME payment calculations.

45.     The PRRB's decisions dismissing the DGME Research FTEs matter for allegedly not being timely appealed are unlawful and must be reversed because the Hospital timely added its challenge to DGME resident FTEs to its FYs 2000 and 2001 appeals on October 15, 2008 and this encompassed DGME research FTEs.  The MAC had a stated policy of excluding research time from the DGME FTE count before CMS notified the MAC of its error by letter dated January 17, 2001.  By October 2008, the MAC had already agreed to include research time in the DGME FTE count for FY 1996.  Therefore, when the Hospital added this matter to its FYs 2000 and 2001 appeals on October 15, 2008, the principal dispute was no longer the MAC's treatment of DGME research time but rather the inadvertent omission of these FTEs from the Hospital's initial claim for these fiscal years.  In *Bethesda, supra,* in holding that the PRRB had jurisdiction, the Court emphasized that the hospital had filed its cost report in compliance with the unambiguous requirements of the Secretary's regulations, and, therefore, the provider's appeal was jurisdictionally proper.  *Id.* at 405.  Here, the Hospital complied with the unambiguous requirements of the MAC by not claiming the DGME research FTEs at issue when it filed its FYs 2000 and 2001 Medicare cost reports.  Therefore, the Hospital has a right to a hearing on

this matter.  *Id.*  In addition, the Hospital did claim the category of DGME costs on its FYs 2000 and 2001 cost reports and merely seeks to adjust that claim rather than add an entirely new claim.

46.     The MAC, CMS, and the Secretary have never challenged the Hospital's position that the Hospital's FYs 2000 and 2001 IME and DGME payments were incorrectly low because of the jurisdictionally-dismissed matters.  Thus, if the Court were to reverse these improper jurisdictional dismissals, the effect would be to have the Hospital receive the payments for FYs 2000 and 2001 to which it is entitled factually and statutorily

**J.      The Hospital's Right to Judicial Review of the PRRB's Jurisdictional Decisions**

47.     Each of the FYs 2000 and 2001 jurisdictional decisions at issue stated that the Hospital could seek judicial review of the PRRB's jurisdictional denials "upon final disposition of this case."

48.     a.     On April 17, 2015, the Hospital signed a "Full Administrative Resolution" with respect to its FY 2000 PRRB appeal.

b.     On April 29, 2015, the Hospital signed a "Full Administrative Resolution" with respect to its FY 2001 PRRB appeal.

c.     Page three of that Full Administrative Resolutions for both the FY 2000 and 2001 appeals included the following language:

> The parties note that the PRRB's decisions denying jurisdiction for these Issues stated that the Provider could seek judicial review of the PRRB's jurisdictional denials "upon final disposition of this case," which the Provider plans to do in response to the PRRB's expected closing of this case (the Provider understands that the closing of this case constitutes the "final disposition" for purposes of further administrative and judicial review).

49.     a.     On May 1, 2015, the PRRB issued a letter closing the Hospital's FY 2000 appeal, which the Hospital received on May 4, 2015.  The PRRB's letter stated, in part, that it had ruled that is did not have jurisdiction over the following issues:  (1) DGME Research

Rotations and Omitted Rotations issues, (2) Clinical Research Beds issue, (3) IME Prior Year Resident to Bed Ratio issue, and (4) DGME/IME Vacation and Leave Time issue.  The letter also stated:  "The review of the jurisdictional determinations are available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875 and 408[*sic*].1877."  The PRRB's May 1, 2015 letter (without attachments) is Exhibit 3 to this Complaint.

      b.      On May 14, 2015, the PRRB issued a letter closing the Hospital's FY 2001 appeal, which the Hospital received on May 19, 2015.  The PRRB's letter stated, in part, that it had ruled that is did not have jurisdiction over the following issues:  (1) DGME Research Rotations and Omitted Rotations issues, (2) Clinical Research Beds issue, (3) IME Prior Year Resident to Bed Ratio issue, and (4) DGME/IME Vacation and Leave Time issue.  The letter also stated:  "The review of the jurisdictional determinations are available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1875 and 408[*sic*].1877."  The PRRB's May 14, 2015 letter (without attachments) is Exhibit 4 to this Complaint.

      50.     Because the CMS Administrator has not reviewed any of the PRRB's jurisdictional decisions in the Hospital's FYs 2000 and 2001 PRRB appeals, the PRRB's (a) May 1, 2015 letter is the final agency action for purposes of judicial review for the Hospital's FY 2000 appeal and (b) May 14, 2015 letter is the final agency action for purposes of judicial review for the Hospital's FY 2001 appeal.

      51.     This action is being timely commenced within 60 days after the Hospital's receipt of the PRRB's (a) May 1, 2015 letter, which gave notice of the final disposition of the Hospital's FY 2000 appeal (*see* 42 U.S.C. §1395oo(f)(1)) and (b) May 14, 2015 letter, which gave notice of the final disposition of the Hospital's FY 2001 appeal (*see* 42 U.S.C. §1395oo(f)(1)).

## COUNT I
## Judicial Review under the APA and the Medicare Act
## (Decisions are Contrary to Law)

52.     Plaintiff hereby incorporates by reference paragraphs 1 through 51 herein.

53.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are unlawful and must be reversed because they are procedurally and substantively contrary to the APA, the Medicare Act, and other authorities, including but not limited to various Medicare regulations.  The Hospital validly appealed its FYs 2000 and 2001 IME and DGME payments to the PRRB.

54.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are procedurally and substantively unlawful and must be reversed because they rely on the improper retroactive application of regulations, interpretations, standards, and other authorities, that cannot be validly applied retroactively to the Hospital's FYs 2000 and 2001 PRRB appeals.  The PRRB's decisions also must be reversed because the Hospital met the improper and improperly retroactively applied regulations, interpretations, standards, and other authorities.

55.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are procedurally and substantively unlawful and must be reversed because they improperly rely as "controlling precedent" on two Seventh Circuit cases that are not binding on the Hospital and do not apply to this action.

56.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are procedurally and substantively unlawful and must be reversed because they unlawfully deprive the Hospital of its right to appeal a final determination of the Secretary under 42 U.S.C. §1395oo(a) and other authorities.

## COUNT II
## Judicial Review under the APA
## (Decisions are Arbitrary and Capricious)

57.     Plaintiff hereby incorporates by reference paragraphs 1 through 56 herein.

58.     Under 42 U.S.C. §1395oo(f), the PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are final agency actions that are subject to judicial review under the applicable provisions of the APA.  Under the APA, the reviewing court shall set aside the final agency decision if, *inter alia*, it is contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record.  5 U.S.C. §706.

59.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because they are inconsistent with:

a.      previous decisions of the PRRB and the Secretary;

b.      the PRRB's previous actions in similar appeals, including but not limited to the acceptance of jurisdiction in the Hospital's FYs 1996-1998 PRRB appeal over matters that the PRRB dismissed from both the Hospital's FYs 2000 and 2001 appeals; and

c.      the PRRB's governing rules.

The PRRB failed to explain or provide a valid rationale for its inconsistent actions.

60.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction prejudice the Hospital by (i) addressing jurisdiction after the time for corrective reopening has passed and (ii) using the lack of clarity of CMS regulations and guidance as a basis for the jurisdictional dismissals.  Moreover, the PRRB unlawfully and unreasonably asserted jurisdiction over IME and DGME payments while rejecting jurisdiction overall of the statistics, matters, and sub-issues necessary to assure that the

Hospital's FYs 2000 and 2001 IME and DGME payments are correct. This prejudices the Hospital by, *inter alia*, causing its FYs 2000 and 2001 Medicare IME and DGME payments to be incorrectly low under the Medicare Act.

61.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because the PRRB failed to address all of the arguments that the Hospital made to oppose the MAC's jurisdictional challenges. Moreover, the PRRB's decisions result in the Hospital's FYs 2000 and 2001 IME and DGME payments being based on incorrect factual data. The PRRB also unlawfully failed to take into account that the Hospital had relied on the Secretary's guidance when (i) submitting its FYs 2000 and 2001 Medicare as-filed cost reports and (ii) filing and pursuing its FYs 2000 and 2001 PRRB appeals.

62.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are procedurally and substantively arbitrary, capricious, and otherwise unlawful under the APA because the PRRB failed to explain or provide a valid rationale for accepting jurisdiction to correct the Hospital's FYs 2000 and 2001 IME and DGME payments, but limiting its jurisdiction to some, but not all, of the statistics, matters, and sub-issues that need to be corrected to assure that the Hospital's FYs 2000 and 2001 IME and DGME payments are, in fact, statutorily accurate.

63.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction are thus contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record pursuant to 5 U.S.C. §706, and other laws, and must be reversed or set aside.

## COUNT III
## Arbitrary and Capricious and Unsupported by Substantial Evidence Under the APA
## (Decisions are Unsupported by the Evidence in the Record)

64.     Plaintiff hereby incorporates by reference paragraphs 1 through 63 herein.

65.     The PRRB's decisions dismissing four matters from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction must be set aside because they are procedurally and substantively arbitrary, capricious, unsupported by substantial evidence in the record, and otherwise unlawful under the APA because, *inter alia*, the PRRB failed to address all of the arguments that the Hospital made to oppose the MAC's jurisdictional challenges and the PRRB relied on incorrect facts.   The PRRB's decisions are thus contrary to law, arbitrary and capricious, an abuse of discretion, or unsupported by substantial evidence in the record pursuant to 5 U.S.C. §706, and other laws, and must be reversed or set aside.

## COUNT IV
## Mandamus

66.     Plaintiff hereby incorporates by reference paragraphs 1 through 65 herein.

67.     The PRRB had the non-discretionary duty to apply properly the law relating to its jurisdiction.   The Hospital is entitled to issuance of a writ of mandamus under the Medicare Act and other authorities requiring the PRRB to accept jurisdiction over the four matters that the PRRB improperly dismissed from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction.

**<u>Requested Relief</u>**

WHEREFORE, the Hospital requests:

1.      An order reversing the PRRB's adverse jurisdictional decisions in the Hospital's FYs 2000 and 2001 appeals;

2.      An order instructing the Secretary and the PRRB to reinstate all issues dismissed by the PRRB from the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction;

3.      An order instructing the Secretary and the MAC to recalculate the Hospital's FYs 2000 and 2001 Medicare payments after taking into account the four matters that the PRRB improperly dismissed from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction, and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2);

4.      The issuance of a writ of mandamus requiring the Secretary to order (a) the PRRB to accept jurisdiction over all of the matters dismissed by the PRRB from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction and (b) the MAC to recalculate the Hospital's total Medicare payments due for FYs 2000 and 2001 after taking into account the four matters that the PRRB improperly dismissed from both the Hospital's FYs 2000 and 2001 appeals for alleged lack of jurisdiction, and pay the Hospital the additional amounts due, with interest calculated in accordance with 42 U.S.C. §1395oo(f)(2);

5.      An order that the Court shall retain jurisdiction over this action for purposes of enforcement until notice, upon motion of the Hospital, of the Secretary's compliance with this Court's order, and the PRRB's compliance with all of the remand instructions of the Secretary;

6.      Legal fees and costs of suit incurred by the Hospital; and

7.      Such other relief as this Court may consider appropriate.


DATED: June 26, 2015                    Respectfully submitted,

                                        HOOPER, LUNDY & BOOKMAN, P.C.


                                        By:     /s/ Robert L. Roth
                                            Robert L. Roth, Esq. (D.C. Bar No. 441803)
                                            HOOPER, LUNDY & BOOKMAN, P.C.
                                            401 9th Street, N.W., Suite 550
                                            Washington, D.C.  20004
                                            Tel:  (202) 580-7701
                                            Fax:  (202) 580-7719
                                            Email:  rroth@health-law.com

                                            Attorneys of Record for Plaintiff The University of
                                            Chicago Medical Center